**UNITED STATES v. KWASNIEWSKI et al.**
Civ. A. No. 7376.

United States District Court
E. D. Michigan, S. D.

June 9, 1950.

Edward T. Kane, U. S. Atty., and George F. Petzer, Asst. U. S. Atty., Detroit, Mich., for plaintiff.

William Cohen, Detroit, Mich., for defendants Joseph Kwasniewski, Delores Theresa Grzenkowicz, and Eleanor Dorothy Grzenkowicz.

Stanley F. Kaczor, Detroit, Mich., for defendant Frank L. Grant.

KOSCINSKI, District Judge.

This is an action in the nature of a bill of interpleader brought by the plaintiff pursuant to Sec. 19 of the World War Veterans' Act of 1924, as amended, Sections 445 and 817, Title 38, U.S.C.A., against the defendants herein named, who have, or claim to have, an interest in a certain policy of National Service Life Insurance issued by the plaintiff, United States of America, to Raymond C. Grzenkowicz.

The insured, Raymend C. Grzenkowicz, enlisted in the U. S. Army on April 21, 1943, and died on March 25, 1944, while in the service. During the time he was in service the insured applied for and was granted a $10,000 contract of National

Life Insurance, in which he designated Stella Yucha Kwasniewski, described as mother, as principal beneficiary, and Joseph Kwasniewski, described as step-father, as contingent beneficiary. The contract was in full force and effect at the time of death of the insured.

Upon maturity of the insurance contract following the death of the insured, insurance benefits were paid to Stella Yucha Kwasniewski, mother and designated beneficiary, in monthly installments of $43.10 from March 25, 1944 until her death on September 2, 1944, at the hands of the contingent beneficiary, Joseph Kwasniewski, under circumstances hereinafter stated.

The defendants Delores Theresa Grzenkowicz and Eleanor Dorothy Grzenkowicz, now Eleanor Dorothy Ponta, are sisters of the insured Raymond C. Grzenkowicz, and all three are the children of the defendant Frank L. Grant, formerly Frank L. Grzenkowicz, and Stella Yucha Kwasniewski, formerly Stella Yucha Grzenkowicz, the principal beneficiary in the policy.

The defendant Frank L. Grant was divorced by his wife, the mother of the three children, on July 14, 1931. She married the defendant Joseph Kwasniewski on May 9, 1933.

At the time of their mother's second marriage, the respective ages of the three children were: Eleanor Dorothy 7½ years, Raymond 6½ years, and Delores Theresa 5½ years. The divorce decree directed the defendant Grant, the father of these children, to pay the sum of $10 per week for their support. The records of the Office of the Friend of the Court, to which these payments were to be made, indicate that in 1943 he was approximately $4,900 in arrears in his payments for the support of the children. Frequent contempt proceedings were instituted against him to enforce compliance with the order of the court, and by his own admission he served 78 days in the county jail for failure to make payments for the children's support. Although he testified that during the 11 years following the remarriage of the children's mother he did visit the children on several occasions, it

satisfactorily appears that a few such visits were made early in that period but that such calls at the home of his former wife related wholly to the proceedings instituted by his divorced wife to enforce payments for support of the children. The surviving sisters of the insured emphatically testified that the only real father they knew was their step-father, Joseph Kwasniewski, although they were aware that Frank L. Grant was their natural father, on a few occasions only they met him on the street by chance. They further testified that they recalled no visits from him whatsoever, that they never received anything from him for birthdays or Christmas, or at any other time, that he never took them anywhere, and it appeared, from all of the testimony, that the natural father was to all intent and purposes a stranger to them. The evidence disclosed that he had completely abandoned them, contributing very little to their support, and only when he was compelled to do so under pressure of court proceedings. The sums he actually paid represented only a minor portion of the amount actually due under the court order.

After their mother's remarriage the three children continued to live with their mother and the defendant Joseph Kwasniewski, their step-father. The step-father was kind and considerate to the children and bestowed upon them the normal affection of a parent toward his own children. For four years after his marriage he was employed as a driver of a bakery delivery wagon, following which he became a police officer of the City of Hamtramck. Throughout his marriage relationship to the mother of these children he turned over to her all his earnings and she returned to him a nominal amount each week for spending money. He actively interested himself in a good bringing up of the children, besides contributing substantially to their support. They accompanied him to various athletic events in which they were interested and, according to the testimony of the two sisters of the insured, he remembered them with gifts or outings on every holiday occasion. The children became very fond of him and the two step-

daughters testified that they and their brother Raymond always referred to him as "dad" because he was a father to them.

The mother of the children was employed the greater portion of the time during which she was married to Joseph Kwasniewski. With borrowed money she and her second husband made a down payment of $1,000 on a home which they purchased on land contract and occupied it with the children as their home. The borrowed funds were repaid and monthly payments on the contract were continued through the joint efforts of husband and wife.

For some time prior to her death Mrs. Kwasniewski developed a habit of drinking to excess, frequenting bars, and consorting with other men. The husband and the two daughters often had to look for her at various bars when she was missing from home. On the day prior to her death she had absented herself from the family home for the entire night and returned only about 4:00 P.M. of the day she died, September 12, 1944, and left the house again without disclosing her destination. On that day her husband, Joseph Kwasniewski, came home from his police duties about 7:00 P.M. and, while preparing his evening meal, received an anonymous telephone call to the effect that he could find his wife in a certain bar, drinking with other men. He went to the bar and found his wife drinking with several men and then saw her leaving with two of the men in an automobile. He followed the automobile to a building in Macomb County before which the car with his wife and the men stopped and into which all three occupants of the car entered. After waiting for some time for them to come out, he decided to find out for himself what the purpose of her visit there was and walked around to the side of the house and peered through a window. It was a dark night so he used his policeman's flashlight which he pointed into the screened window. Through the window screen he saw his wife in a compromising position with one of the men, whereupon he crashed through the screen, pulled out his gun which he always carried with him as a police officer, and fired several bullets at his wife and the man with her. His wife died from the bullet wounds but the man recovered and testified against him at the murder trial in Macomb County Circuit Court. A defense of temporary insanity was interposed on Kwasniewski's behalf and he was acquitted of the killing by a verdict of the jury.

The two sisters of the insured testified in this court that, although frequent arguments occurred between their mother and step-father, due to her objectionable drinking habits, their step-father never threatened her life; he himself testified that he loved his wife and never intended to take her life but that his action in shooting her was the result of emotional disturbance and without any thought as to the consequences of his act.

Defendant Joseph Kwasniewski, the step-father of the insured, appears as claimant here, by virtue of being named as contingent beneficiary and as being in loco parentis to the insured, but in his answer to the complaint he has stated that he intends to and will assign to his two step-daughters all of his right, title and interest in and to said insurance benefits and offers to assign said benefits to them as soon as his right thereto is determined by the court. It is argued on his behalf that he has not forfeited his rights to such insurance payments by his killing of the principal beneficiary since he was acquitted of the charge of murder; that the rule of public policy barring payment of insurance benefits to one who kills the insured or primary beneficiary, and insurance payments would otherwise inure to him by the death had it not been caused by his own act, operates only in cases of intentional and felonious killings; and that the killing in the instant case was not felonious and intentional.

Defendant Frank L. Grant, natural father of the insured, contends that Joseph Kwasniewski forfeited his rights to the insurance payments by his wrongful killing of the principal beneficiary and that such payments should be paid to and become part of the estate of the insured and the benefits should be paid to him in his capacity as father and sole heir-at-law of the decedent, Raymond C. Grzenkowicz.

The issues involved are:

1. Did Joseph Kwasniewski, the contingent beneficiary, forfeit his rights to the insurance payments by reason of his taking the life of the principal beneficiary through whose death he would receive such payments?

2. If the rights of the contingent beneficiary are forfeited, who is the legal beneficiary entitled to receive such insurance payments?

Pertinent portions of Title 38 U.S.C.A. § 802(h), in effect at the time the policy matured on March 25, 1944, provide that such insurance shall be payable in the following manner:

"(2) If the beneficiary to whom payment is first made is thirty or more years of age at the time of maturity, in equal monthly installments for one hundred and twenty months certain, with such payments continuing during the remaining lifetime of such beneficiary.

"(3) Any installments certain of insurance remaining unpaid at the death of any beneficiary shall be paid in equal monthly installments in an amount equal to the monthly installments paid to the first beneficiary, to the person or persons then in being within the classes hereinafter specified and in the order named, *unless designated by the insured in a different order*—[Italics supplied]

\*    \*    \*    \*    \*    \*

"(C) if no widow, widower, or child, to the parent or parents of the insured who last bore that relationship, if living, in equal shares;

"(D) if no widow, widower, child, or parent, to the brothers and sisters of the insured, if living in equal shares."

The insured did designate in the policy the order in which such installments of insurance were to be paid, namely, to Stella ·Yucha Kwasniewski, mother, and in the event of her death, to Joseph Kwasniewski, step-father.

█ .The insured intentionally excluded his natural father as either principal or contingent beneficiary and named as principal beneficiary his mother, and contingent beneficiary his step-father toward whom he felt the attachment of a son towards a father. The evidence in this case is persuasive that Joseph Kwasniewski was a person in loco parentis to the insured who last bore that relationship to insured, and was within the permitted class of beneficiaries under the above statute. Upon the death of the principal beneficiary he would be entitled to the insurance payments but for the death of the principal beneficiary at his own hands.

█ It is a fundamental rule of common law that no man shall be permitted to profit by his own wrongful act. Courts have consistently held that a beneficiary who intentionally and feloniously kills the insured is barred from claiming insurance proceeds on the life of the insured. The same principle applies to a case involving killing of a principal beneficiary by a contingent beneficiary. 46 C.J.S., Insurance, § 1171; Ohio State Life Insurance Co. v. Barron, 274 Mich. 22, 263 N.W. 786.

It is claimed on behalf of Joseph Kwasniewski that he killed the principal beneficiary during a period of temporary insanity; that such killing was not intentional and felonious; that he was acquitted of the murder charge in the criminal proceeding, and hence is not barred from claiming the insurance funds. The fact that the person who would acquire property as a result of the death of the person killed has been acquitted of the killing does not prevent the application of the rule. Restatement of the Law, Restitution, Property Acquired on Death, Sec. 187, subds. e, f.

█ The record of the criminal proceeding in which Joseph Kwasniewski was acquitted of the murder charge is not binding upon this court. Metropolitan Life Insurance Co. v. McDavid, D.C., 39 F.Supp. 228. Testimony was submitted in the present case relating to the circumstances which led to the death of Stella Yucha Kwasniewski. Although the jury found in the criminal proceeding that Joseph Kwasniewski killed his wife during a period of temporary insanity which warranted acquittal of the murder charge, it cannot be said, for the purposes of the instant suit, that the killing was not intentional and felonius.

852

In the case of Metropolitan Life Insurance Co. v. McDavid, cited above, the insurance claimant was convicted of manslaughter in the killing of her husband, the insured. During an argument he struck her with his hand on the side of her head, causing her nose to bleed, she became very angry and in such anger and before there had been a cooling time, she took a revolver out of her handbag and shot him dead. In the suit on the insurance claim, Judge Tuttle, of this District, discussed at length in his opinion the effect of murder, voluntary and involuntary manslaughter of the insured by the beneficiary, and the right of the killer to claim the insurance proceeds. He cites the case of Maher v. People, 10 Mich. 212, 218, 81 Am.Dec. 781, in which voluntary manslaughter is defined as "a killing, though intentional, committed under the influence of passion or in heat of blood, produced by an adequate or reasonable provocation, and before a reasonable time has elapsed for the blood to cool and reason to resume its habitual control, and as a result of the temporary excitement, by which the control of reason was disturbed, rather than of any wickedness of heart or cruelty or recklessness of disposition, and that the law, out of indulgence for the frailty of human nature, or rather, in recognition of the laws upon which human nature is constituted, very properly regards the offense as of a less heinous character than murder." In the McDavid case, supra, Judge Tuttle admitted the record of the criminal case in evidence but did not deem it binding upon the court. There the wife was found guilty of manslaughter. In that case evidence was submitted from which the court found that at the time of the killing the wife was not intoxicated, she was of sound mind, she was not acting in self-defense, her husband had given her provocation for being angry, she was angry, there had not been a cooling time, she intended to kill him and did kill him. The court held she was not entitled to receive the insurance proceeds.

In the case of Ohio State Life Insurance Co. v. Barron, 274 Mich. 22, 263 N.W. 786, 787, suit was filed to collect an insurance fund for the benefit of the estate of a man who killed his wife and then committed suicide. Testimony introduced in that case was to the effect that he suffered mental abnormalities periodically, that he was frequently intoxicated, and tended to show that he did not act like a sane man at the time of the killing. The court held that if an insane beneficiary kills the insured under such circumstances as would amount to murder were beneficiary sane, such killing does not forfeit the policy or bar the right to recover the insurance money, but it further determined that in that case the finding was insufficient to show that the husband was insane at the time of the homicide, stating, "Conceding that Charles B. Sneyd may have been periodically mentally afflicted, even temporarily insane, we think it almost conclusively appears from the record in this case that at the time he killed his wife his mentality was such as rendered him responsible for the homicide."

■ Although, as stated in the case cited above and other cases, murder by an insane person is an exception to the rule against permitting recovery of benefits to a person who kills another and to whom such benefits would accrue only upon the death of the victim, there appears to be no authority for exempting from the operation of the rule a case involving a killing during a moment of temporary insanity, induced by emotional disturbance.

■ Defendant Joseph Kwasniewski contends that the killing of his wife was unintentional, and that an unintentional killing would be exempt from the operation of the rule. A reading of the decisions cited herein and others leaves no doubt as to whether recovery would be allowed in cases of involuntary manslaughter where an unintentional killing resulted from the commission of an unlawful act not amounting to a felony or from gross negligence, or in cases where, although a felonious act was committed, and an intent to kill a person other than the insured was present, the killing of the insured was accidental. But the conclusion seems inescapable that the circumstances under which defendant Joseph Kwasniewski killed his wife would not constitute such unintentional killing as

would exempt this case from the operation of the rule of public policy here stated.

True, the circumstances of the killing were sufficiently extenuating to convince the jury that Joseph Kwasniewski should be acquitted in the criminal proceeding and should not be subjected to punishment by imprisonment, but the same reasoning would not apply in a civil suit in which he seeks benefits which would accrue to him only upon the death of the person for whose death he himself was responsible. At the time of the killing he was not acting in self-defense, he was not intoxicated, and, although he was under a mental and emotional strain caused by the misconduct of his wife, he was not an insane person. The killing was wrongful, unlawful, and even under the circumstances mentioned, neither justifiable nor excusable. And this court has reached the conclusion that it was also intentional in the sense that he felt an urge to punish and had taken revenge on his wife for her infidelity; it was a killing under circumstances which would bar his right to recovery of the insurance funds.

█ Any attempted assignment of Joseph Kwasniewski's rights under the policy to his step-daughters, even if an assignment of the insurance proceeds were permitted, would be a futile act, since in the court's view of the facts and law he acquired no right or claim which could be the subject of an assignment here.

There being, then, no designated beneficiaries who could successfully claim under the policy, the proceeds are payable under the provisions of Sec. 802(h) of Title 38 U.S.C.A. to "the parent or parents of the insured who last bore that relationship, if living, in equal shares."

█ Frank L. Grant seeks recovery of the insurance fund under this provision of the statute as the natural father of the insured. It is the opinion of this court that although he is the natural father of the insured by reason of the circumstances of birth, he could not, in view of the estrangement of many years existence between him and his children, and his abandonment of the children, be considered as a parent of the insured "who last bore that relationship."

The purpose of the legislation relative to insurance of a deceased serviceman was to provide a method for assisting by proceeds of such insurance policies persons dependent to some extent upon those in active service. Neuhard v. United States, D.C., 83 F.Supp. 911. Frank L. Grant was practically a stranger to his children, the insured and his two sisters. Kwasniewski, the step-father, was the "parent of the insured who last bore that relationship" at the time of insured's death; he bestowed upon the children the normal affection and concern of a father. The insured, his mother, step-father, and two sisters were a closely-knit family circle, each dependent upon the other as a family unit, and each a part of a group such as was intended by Congress to be the beneficiaries as "dependent to some extent upon the one in service." The natural father failed to assume any responsibility toward the children with the exception of the inadequate small sums he contributed for a time under court process for their support and on which order he was in arrears by several thousand dollars by the time his children were old enough to aid in supporting themselves. This arrearage was never paid. Having rid himself of the responsibilities of the father-child relationship, it would be unconscionable and contrary to justice and public policy to permit him at this time to reap any benefits as a result of the death of a child to whom he once bore such relationship but which relationship he disavowed by his acts many years ago. The insured ceased to consider him as a parent, which fact is borne out by the intentional omission of the natural father's name as beneficiary and specific naming of the step-father as one of the beneficiaries in such policy.

The law expressly provides that no installments of such insurance shall be paid to the heirs or legal representatives as such of the insured or of any beneficiary. Sec. 802(j), Title 38 U.S.C.A.

█ The step-father, Joseph Kwasniewski, even if he had not been designated as

beneficiary, but for the unfortunate killing of the principal beneficiary would have been entitled to the insurance benefits as "parent who last bore that relationship," under the statutory provision. The "parent," Joseph Kwasniewski, having forfeited his rights to these payments by his wrongful act, the insurance benefits are payable to the next class of beneficiaries set forth in the statute, and these beneficiaries are the natural sisters of the insured, Delores Theresa Grzenkowicz and Eleanor Dorothy Grzenkowicz Ponta.

### Judgment

It is hereby ordered, adjudged and decreed that plaintiff pay the remaining installments on its National Life Insurance policy heretofore issued by plaintiff on the life of Raymond Grzenkowicz, the insured, to Delores Theresa Grzenkowicz and Eleanor Dorothy Grzenkowicz Ponta, sisters of said insured, and that defendants Joseph Kwasniewski and Frank L. Grant are not entitled to any portion of the proceeds of the insurance fund payments here involved.