[S. F. No. 18117. In Bank. Mar. 21, 1952.]

HERBERT BECK, as Administrator, etc., Appellant, v. WEST COAST LIFE INSURANCE COMPANY et al., Respondents; JETTIE KNOLL, Intervener and Respondent.

644

Chas. I. Rosin for Appellant.

Paul Friedman for Intervener and Respondent.

TRAYNOR, J.—On May 23, 1946, the West Coast Life Insurance Company issued a life insurance policy to Mrs. D. A. Downey. The beneficiary clause provided that the proceeds be paid to "David Albert Downey—Husband, if living, otherwise to Jettie Knoll—Friend of the Insured." The insured reserved the right to change beneficiaries. On July 18, 1947, the primary beneficiary murdered the insured in Colorado. He has been convicted of the crime and sentenced to life imprisonment. (*Downey* v. *People*, 121 Colo. 307 [215 P.2d 892].) Herbert Beck, administrator of Mrs. Downey's estate, brought this action against the insurer to recover the proceeds of the policy. In its answer the insurer alleged that the cause of death was not within the coverage of the policy and asked that the policy be cancelled for fraud. Leave was then granted to Jettie Knoll, the alternative beneficiary, to intervene in the action. Beck and Knoll each moved for judgment on the pleadings against each other, and the trial court granted Knoll's motion and ordered that the action proceed with Knoll as sole plaintiff against the insurer. Beck has appealed from the judgment that he has no interest in the policy.

Under the terms of the policy the murderer is entitled to the proceeds, but since it would be unconscionable to allow him to profit from his own wrong, he may neither receive nor retain them. (*Drown* v. *New Amsterdam Casualty Co.*, 175 Cal. 21, 23 [165 P. 5]; *West Coast Life Ins.*

*Co.* v. *Crawford,* 58 Cal.App.2d 771, 773 ·[138 P.2d 384] ; see, also, cases collected in 91 A.L.R. 1486.) ■ Unless the policy so provides, however, the insurer is not relieved of liability because of the disqualification of the principal beneficiary. (*Meyer* v. *Johnson,* 115 Cal.App. 646, 650 [2 P.2d 456] ; *West Coast Life Ins. Co.* v. *Crawford,* 58 Cal.App. 2d 771, 786 [138 P.2d 384] ; see Vance on Insurance [2d ed.] p. 599.) It is therefore necessary to determine whether the proceeds should be paid to the named alternative beneficiary or to the estate of the insured.

The general principle that precludes a wrongdoer from unjustly enriching himself has been codified in section 2224[1] and 3517[2] of the Civil Code and applied in a variety of situations. ■ '' [W]here the defendant has by his own wrong obtained the legal title to property, a trust as to such property will be imposed upon him in favor of the party injured. This principle is a familiar one and is based upon the maxim, which has been carried into our code (Civ. Code, sec. 3517), that no one may profit by his own wrong. The instances of its application are as various nearly as the ways in which property can be wrongfully acquired.'' (*Brazil* v. *Silva,* 181 Cal. 490, 494 [185 P. 174] ; see, also, *Sears* v. *Rule,* 27 Cal.2d 131, 139 [163 P.2d 443] ; *Weinstein* v. *Moers,* 207 Cal. 534, 541-542 [279 P. 444] ; *Smith* v. *Lombard,* 201 Cal. 518, 527-528 [258 P. 55] ; *Brison* v. *Brison,* 75 Cal. 525, 526-527 [17 P. 689, 7 Am.St.Rep. 189] ; 11 A.L.R.2d 808; 159 A.L.R. 997; 102 A.L.R. 589.) Once it is determined that the wrongdoer may not receive or retain the property, the question arises as to who is the injured party or ''the person who would otherwise have had it'' (Civ. Code, § 2224.) Frequently the answer is obvious. Thus in the Silva case, where the sole beneficiary under the will fraudulently prevented the testator from revoking it, it was clear that the heirs were the injured parties. Again, when one person conveys his property to another in reliance on a fraudulent promise to hold it in trust for the transferor, the latter is the one who would have had it but for the fraud. (*Brison* v. *Brison,* 75 Cal. 525 [17 P. 689, 7 Am.St. Rep. 189].) ■ The problem is more difficult, however,

[1]''One who gains a thing by fraud, accident, mistake, undue influence, the violation of a· trust, or other wrongful act, is, unless he has some other and better right thereto, an involuntary trustee of the thing gained, for the benefit of the person who would otherwise have had it.''

[2]''No one can take advantage of his own wrong.''

when the primary beneficiary of an insurance policy murders the insured. It will ordinarily be impossible to determine who would have received the proceeds but for the murder. The murderer himself might have received them through the natural death of the insured. The insured might have outlived the murderer but not the alternative beneficiary, or the insured might have changed the beneficiaries altogether. If the alternative beneficiary were older than both the primary beneficiary and the insured, the probabilities would favor the heirs or legatees of the insured as those most likely to take but for the murder. In any event all doubts must be resolved against the murderer. Whatever the probability that he would have received the proceeds had he not murdered the insured, he cannot be allowed to insure that result by his own wrongful conduct. (*Cleaver* v. *Mutual Reserve Fund Life Ass'n* (1892), 1 Q.B. 147, 160; see 3 Scott on Trusts, § 494.1, p. 2407.)

As between the estate of the insured and the alternative beneficary there are three possible solutions. It has been held that the absence of any express provision in the policy permitting the alternative beneficiary to take, when the primary beneficiary is still alive, requires that the proceeds be paid to the estate of the insured. (*Beck* v. *Downey,* 191 F.2d 150, 152.) The choice might also be made on the basis of mortality tables and the proceeds paid to the person or persons who would be most likely to take had the murder not been committed. The third solution is to allow the alternative beneficiary to recover the proceeds. (*Metropolitan Life Ins. Co.* v. *McDavid,* 39 F.Supp, 228; *Neff* v. *Massachusetts Mutual Life Ins. Co.* (Ohio Common Pleas), 96 N.E.2d 53, 54-55; *United States* v. *Kwasniewski,* 91 F.Supp. 847, 854; *Sharpless* v. *Grand Lodge Ancient Order of United Workmen,* 135 Minn. 35, 37 [159 N.W. 1086, L.R.A. 1917B 670]; see 3 Scott on Trusts, § 494.1, p. 2407; Costigan, note, 9 Ill.L.Rev. 505, 509; Wade, *Acquisition of Property by Wilfully Killing Another—A Statutory Solution,* 49 Harv.L.Rev. 715, 742.)

We have concluded that the third solution should be adopted. Because the beneficiary clause of a life insurance policy in which the insured has reserved the right to change beneficiaries is donative and testamentary in character (*Grimm* v. *Grimm,* 26 Cal.2d 173, 175-176 [157 P.2d 841]; *Landrum* v. *Landrum's Admx.,* 186 Ky. 775, 779 [218 S.W. 274]; *Continental Life Ins. Co.* v. *Palmer,* 42 Conn. 60, 65 [19 Am.

Rep., 530]), the intent of the insured as expressed by the language that she used should be given effect so far as possible. (*Estate of Lefranc*, 38 Cal.2d 289, 295-296 [239 P.2d 617], and cases cited; see, also, Prob. Code, § 101.) Although her expressed intent that her husband receive the proceeds cannot be given effect, the policy names the one she wished to take if her husband could not. It stated that the proceeds should be paid to the alternative beneficiary, if the primary beneficiary predeceased the insured. Thus, in the type of disability that would naturally be anticipated by the insured, the alternative beneficiary was preferred over the estate of the insured. ■ In this case there occurred the only other possible contingency in which the primary beneficiary would be under a disability equivalent to actual death. The insured has clearly indicated her intent that any interest her estate might have in the proceeds of the policy should be subordinate to the interest of the alternative beneficiary. This intent is recognized by a holding that the alternative beneficiary may recover the proceeds. A holding that the estate of the insured is entitled to the proceeds would not only defeat this intent, but would also enable the murderer to deprive the alternative beneficiary of her opportunity to take in preference to the estate by foreclosing the possibility that the murderer might predecease the insured. The rule that prevents his profiting by his own wrong should not be invoked in such a way as to prejudice the rights of the alternative beneficiary. "In a word, it appears to me that the crime of one person may prevent that person from the assertion of what would otherwise be a right, and may accelerate or beneficially affect the rights of third persons, but can never prejudice or injuriously affect those rights." (Fry, L. J. in *Cleaver* v. *Mutual Reserve Fund Life Ass'n* (1892), 1 Q.B. 147, 160.)

It is contended, however, that the court may not award the proceeds to the alternative beneficiary on the theory of enforcing a constructive trust against the murderer on the ground that the doctrine of constructive trusts does not apply to this situation in this state. In the case of intestate succession there is a specific statutory provision preventing a convicted murderer from succeeding to any part of the estate of his victim and providing how the murderer's share should be distributed. (Prob. Code, § 258.) Although there is no such specific provision governing the disposition of the proceeds of life insurance, it may be contended that the pub-

lic policy expressed in the Probate Code prevents the passage of either equitable or legal title to the murderer. Since we are not here concerned with any possible interest of a bona fide purchaser for value from the murderer, it is unnecessary to decide whether or not legal title passed to him. Even if it is assumed that the legal title did not pass, an appropriate rule of law must be applied to determine upon whom it devolved. A refusal to allow the legal title to go to the murderer under the terms of the policy would present the same problem as that created by prohibiting him from taking the equitable title, and accordingly, the same considerations that lead the chancellor to select the alternative beneficiary as the beneficiary of a constructive trust, would lead to a rule of law that the legal title devolves upon her.

The judgment is affirmed.

Gibson, C. J., Shenk, J., Carter, J., and Schauer, J., concurred.

EDMONDS, J.—The parties agree that there is no ambiguity in the beneficiary clause of the policy which would justify the admission of extrinsic evidence to explain the meaning of the words used in it. The decisive question, therefore, is the very narrow one of textual interpretation. In my opinion, only by ignoring the clear and unequivocal language of the policy of insurance may the conclusion be reached that the alternative beneficiary is entitled to the proceeds despite the fact that the contingency conditioning her right has never occurred.

The decision is placed upon the ground that "the policy names the one . . . [the insured] wished to take if her husband could not." In effect, the clause "if living" is enlarged But the provisions of the policy do not express any intent to mean "if living and not otherwise disqualified to take." that Jettie Knoll should be the beneficiary if David Downey is disqualified for some reason other than his death. The contract specifically states, as the only contingency upon which Jettie Knoll could become entitled to its proceeds, that David Downey be not living.

"In the construction of a[n] . . . instrument, the office of the judge is simply to ascertain and declare what is in terms or in substance contained thereon, *not to insert what has been omitted.* . . ." (Code Civ. Proc., § 1858 [italics added].) In violation of this salutary rule, on the basis of

conjecture, an omission is supplied which may have been either accidental or intentional.

Most of the reasoning to support the decision in favor of the alternative beneficiary is based upon the doctrine of constructive trusts. The question as to whether the doctrine is here applicable is not decided, but upon a theory which the court refuses to expressly apply, it is determined that Jettie Knoll is "the person who would otherwise have had" the property. This, says the opinion, is one of three possible solutions to the problem. It is chosen in preference to a construction that the alternative beneficiary shall take only when the express condition of her right to do so has been met.

To determine "the person who would otherwise have had" the property without giving effect to the unambiguous language of the contract is an impossible task. The insured reserved the right to change the beneficiary. Who can say what disposition Lila Downey might have made of the proceeds had she lived? She had the unqualified right to name the payee of the policy by designating the beneficiary. Under these circumstances, even if the doctrine of constructive trusts is applicable, the ultimate question is: Who is entitled to the proceeds under the express terms of the contract?

Sound public policy dictates that a murderer should not be permitted to profit from his own wrong. (*Drown* v. *New Amsterdam Casualty Co.*, 175 Cal. 21 [165 P. 5]; see cases collected in 91 A.L.R. 1486; 70 A.L.R. 1539.) However, because that rule bars David Downey from receiving the insurance money, this court is not thereby at liberty to disregard the otherwise valid provisions of the policy.

To reinforce its conclusion, the majority opinion relies upon a number of cases from other jurisdictions. With one exception, each of them is distinguishable upon its facts.

In *Metropolitan Life Ins. Co.* v. *McDavid*, 39 F.Supp. 228, the administrator of the estate of the deceased insured made no claim upon the proceeds of the policy in which a contingent beneficiary was named. The court was not faced with, and did not consider, adverse claims as between the insured's estate and the contingent beneficiary. The only question there decided was "whether Beatrice McDavid took the life of her husband, Israel McDavid, under such circumstances that she cannot receive the proceeds of these policies as she otherwise would have done." (P. 229.)

In *United States* v. *Kwasniewski*, 91 F.Supp. 847, the mur-

derer was a contingent beneficiary, and the victim the principal beneficiary, of a matured policy of insurance. Of necessity the court construed a governing federal statute (38 U.S.C., § 802[h]). To determine the rights of the parties, it looked to the legislative purpose to provide assistance to persons dependent upon the insured. There was no contest between the estate of either the insured or the principal beneficiary and any contingent beneficiary because the statute expressly provided that no installments of insurance should be paid to the heirs or legal representatives of the insured or of any beneficiary. (38 U.S.C., § 802[j].) *Sharpless* v. *Grand Lodge Ancient Order of United Workmen*, 135 Minn. 35 [159 N.W. 1086, L.R.A. 1917B 670], did not involve a dispute between the insured's estate and a contingent beneficiary.

Only *Neff* v. *Massachusetts Mutual Life Ins. Co.* (Ohio Common Pleas), 96 N.E.2d 53, offers support for the present decision. The reasoning of that decision, as in the present one, entirely ignores the unambiguous language of the contract. Certainly the decision of a *nisi prius* court is not here controlling.

The majority opinion also cites, but refuses to follow, the decision of the United States Court of Appeals for the Ninth Circuit in *Beck* v. *Downey*, 191 F.2d 150. (Petition for certiorari to the United States Supreme Court now pending.) This is another case which concerns the right to the proceeds of insurance upon the life of Mrs. Downey. The district court awarded judgment to the alternative beneficiary in policies which read: "to David A. Downey, husband, as beneficiary, if living; otherwise to Jennie B. Downey, mother-in-law, as contingent beneficiary." The judgment was reversed with directions to enter one in favor of the administrator of the estate of the insured.

The majority opinion of this court inaccurately states the rule of *Beck* v. *Downey* to be "that the absence of any express provision in the policy permitting the alternative beneficiary to take, when the primary beneficiary is still alive, requires that the proceeds be paid to the estate of the insured." More correctly, the holding is that the contract must be given effect according to its plain terms which provide that the contingent beneficiary can take only if the principal beneficiary is not alive. The court analyzed the rights of the parties as follows: "The contingency, which was a condition precedent to Jennie B. Downey's right to the proceeds, was

that David A. Downey be not 'living' at the time of the death of the insured. In the ordinary meaning of the word 'living,' the contingency conditioning Jennie B. Downey's right to the fund never occurred. For when Lila L. Downey died . . ., David A. Downey was 'living.' The public policy that prevented David A. Downey from receiving the proceeds does not produce the result of vesting the fund in the contingent beneficiary. . . .

"The words 'if living' must be interpreted in their ordinary common sense meaning, namely, that the insured intended the proceeds to go to her mother-in-law, if the beneficiary was not alive but was 'dead and buried.' Had there been an intent to have the proceeds go to the contingent beneficiary in the event of any *incapacity* of the beneficiary, while alive, to take the proceeds, plain language to that effect could and certainly would have been used. We think the language of the policies was clear and unequivocal." (P. 152.)

The language construed in *Beck* v. *Downey, supra,* is substantially the same as that here under consideration. The two cases are identical in all material respects. They concern the same deceased and the same provision of policies upon her life. The reasoning of the federal court is equally applicable to the rights of Beck and Jettie Knoll. Although that court was not applying California law and its decision is not here controlling, it is anomalous for the two highest courts in this jurisdiction to reach opposite conclusions upon the same facts by applying the same general principles of common law.

For these reasons, I would reverse the judgment with directions to the trial court to enter a judgment ordering that Herbert Beck, administrator, is, as against Jettie Knoll, the owner of and entitled to the possession of the proceeds of the life insurance policy; that Jettie Knoll take nothing by her complaint in intervention; and that the other issues presented by the answer and cross-complaint of West Coast Life Insurance Company to the complaint of Beck, as administrator, be tried solely between them.

Spence, J., concurred.

Appellant's petition for a rehearing was denied April 17, 1952. Edmonds, J., and Spence, J., were of the opinion that the petition should be granted.