Zimmerman, J.
A decision in this controversy depends upon the proper interpretation of the beneficiary clause or settlement agreement executed by the insured and the subsequently executed amended beneficiary clause or settlement agreement, both of which are a part of the insurance policy herein involved.
The former recites:
“If the policy shall mature as a death claim, the proceeds shall be paid in one sum to my husband, Steven H. Michaels, if living, otherwise to my stepchildren, James G-. Michaels and Patricia E. Michaels, and any other child or children hereafter born of the marriage of myself and my said husband, equally, or to the survivors or survivor of them, if living, otherwise to my executors or administrators.”
And the latter provides:
“In the event of the death of the insured, the proceeds shall be retained by the company, as provided iu option ‘D,’ and interest thereon paid semi-annually to the insured’s husband, Steven H. Michaels (born Nov. 17, 1899), if living, with the right on the part of said husband, at any time after the death of the insured, to withdraw the whole or any part of the proceeds.
“Upon the death of the survivor of the insured and said husband, any amount then remaining by the terms of the policy shall be apportioned to the insured’s stepchildren, James Gr. Michaels and Patricia E. Michaels, and any other child or children born of the marriage of the insured and said husband, equally, or to the survivors or survivor of them, if living.
“Any share apportioned at any time, in accordance with the provisions hereof, to any of said children shall be held under option ‘D,’ and interest thereon *48 paid annually to such child, with the right on the part of such child, at any time while receiving installment payments, to withdraw the whole or any part of the proceeds of said share.
“Upon the death of any of said children after the apportionment of any share to such child, any amount of such deceased child’s share then remaining by the terms of the policy shall be apportioned to each of the other children above mentioned, equally, or to the survivors or survivor of them, if living.
“Upon the death of the last survivor of the insured, said husband and said children, any amount then remaining by the terms of the policy shall be paid in one sum to the executors or administrators of such last survivor.
i 6 % # #
“Unless otherwise provided herein or by law, any moneys due or any right granted to any minor shall be paid to or exercised by the legal guardian of such minor. ’ ’
Of course, Steven Michaels, the murderer, is elimi nated as a beneficiary. Based upon sound public policy, it is well settled everywhere that, even in the absence of a statute so providing, the beneficiary of an insurance policy who feloniously kills the insund can not take under the policy. Filmore v. Metropolitan Life Ins. Co., 82 Ohio St., 208, 92 N. E., 26, 28 L. R. A. (N. S.), 675, 137 Am. St. Rep., 778. See, also, 1 Appleman, Insurance Law and Practice, 452, Section 381; 46 Corpus Juris Secundum, 57, “Insurance,” Section 1171; 29 American Jurisprudence, 979, Section 1310. Compare Section 10503-17, Ueneral Code.
And it is equally true that Steven Michaels, as long as he is actually alive, can not be treated as legally dead because of his incarceration in the penitentiary for life. The so-called doctrine of “civil death” in this country is generally based upon statute and does *49 not prevail in Ohio. Frazer v. Fulcher, 17 Ohio, 260. See, also, 18 Corpus Juris Secundum, 103, “Convicts,” Section 4; 16 American Jurisprudence, 12, Section 5.
Where there is but one beneficiary designated in a life insurance policy and such beneficiary murders the insured, the general rule applicable is as stated in lie ■ statement of the Law of Restitution, 776, Section 189, as follows:
“If the beneficiary of a life insurance policy murders the insured, he is not entitled to receive and to keep the proceeds of the policy. In such a case ordinarily the executor or administrator of the insured is entitled to receive the proceeds of the policy from the insurer and to apply them in the same way in which they would have been applicable if the beneficiary had predeceased the insured or was otherwise incapable of taking or disqualified from taking the proceeds.”
However, under the life insurance policy in the instant case, there were several beneficiaries named with varying rights and privileges and under those conditions a more complicated problem arises.
Plaintiff, in urging an affirmance of the judgment of the Court of Appeals, cites and relies principally on three cases, in each of which the primary beneficiary murdered the insured and in each of which it was held that the proceeds of the policy went to the estate of the insured.
The first of these cases is Schmidt, Admr., v. Northern Life Assn. (1900), 112 Iowa, 41, 83 N. W., 800, 84 Am. St. Rep., 323, 51 L. R. A., 141, which involved a benefit certificate of insurance, issued by a mutual benefit society on the life of Claus Behrens, “payable to Christina Maria Behrens [wife of the insured], her heirs or legal representatives.” The syllabus to that case reads as follows:
< í * * * Where the beneficiary in a benefit certificate of insurance murdered the assured, she thereby for *50 feited all rights under the certificate; hence (she being still alive) no assignee of her children as heirs could recover thereon.
“* * * The children of such beneficiary, who is under sentence of imprisonment for life, can not take under such certificate, as heirs, civil death by such sentence not being recognized by the law of this state. Where the beneficiary in a benefit certificate of insurance murdered the assured, the company’s liability was not thereby terminated, but the benefits under the certificate reverted to and became a part of the assured’s estate, and his administrator could recover thereon for the benefit of those who would have been entitled to the insurance, had no beneficiary been designated. ’ ’
The second case is that of Beck v. Downey (1951, C. C. A. 9, judgment vacated by the Supreme Court and cause remanded for reconsideration in the light of the decision in the case of Beck v. West Coast Life Ins. Co. [Cal.], 241 P. [2d], 544), 191 P. (2d), 150, involving two life insurance policies issued on the life of Lila L. Downey, as the insured, the proceeds of which, upon due proof of her death, were payable “to David A. Downey, husband, as beneficiary, if living; otherwise to Jennie B. Downey, mother-in-law, as contingent beneficiary. ’ ’
David A. Downey killed Lila L. Downey and was subsequently convicted of murder and sentenced to life imprisonment in a penal institution.
The court below entered judgment awarding the proceeds of the policies to Jennie B. Downey, the contingent beneficiary. In reversing such judgment and in ordering entry of judgment in favor of the administrator of the insured, the reviewing court, the Circuit Court of Appeals, said in the course of its opinion:
“But who is entitled to the policy proceeds as be *51 tween the insured’s estate and the contingent beneficiary requires resolution of a different question. The contingency, which was a condition precedent to Jennie B. Downey’s right to the proceeds, was that David A. Downey be not ‘living’ at the time of the death of the insured. In the ordinary meaning of the word ‘living,’ the contingency conditioning Jennie B. Downey’s right to the fund never occurred. For when Lila L. Downey died in Colorado on July 18, 1947, David A. Downey was ‘living.’ The public policy that prevented David A. Downey from receiving the proceeds does not produce the result of vesting the fund in the contingent beneficiary. * * *
“The words ‘if living’ must be interpreted in their ordinary common-sense meaning, namely, that the insured intended the proceeds to go to her mother-in-law, if the beneficiary was not alive but was ‘ dead and buried.’ Had there been an intent to have the proceeds go to the contingent beneficiary in the event of any incapacity of the beneficiary, while alive, to take the proceeds, plain language to that effect could and certainly would have been used. We think the language of the policies was clear and unequivocal. Any disability of the beneficiary such as ‘civil death,’ assuming it to be applicable in this case, constituted a sanction or penalty imposed upon the beneficiary David A. Downey and affected only his rights and privileges.”
The third and last case is that of Bullock v. Expressmen’s Mut. Life Ins. Co. (1951), 234 N. E., 254, 67 S. E. (2d), 71, which dealt with a policy of insurance on the life of Willie P. Bullock and in which it was provided that upon the death of the insured the proceeds of the policy should be paid to “Maydie Taylor Bullock, wife of the insured, if living, or' if not living to Rudolph Pink Bullock, son of the insured. ’ ’
Willie P. Bullock died as a result of bullet wounds *52 inflicted by his wife, Maydie Taylor Bnllock. She was convicted of manslaughter and was sentenced and committed to prison.
The trial court adjudged that Eudolph Pink Bullock, the contingent beneficiary, was entitled to the proceeds of the policy. On appeal, the Supreme Court of North Carolina reversed the judgment below and ordered judgment to be entered in favor of the administrator of the insured.
In reaching such conclusion the court said in its opinion:
“While in the case at bar it may be presumed in the light of subsequent happenings the insured would have wished his foster son to have the insurance money, the court, in determining as a question of law the party entitled, must give effect to the terms of the policy which constituted the contract between the insurer and the insured. The court is without authority to change the terms of a contract the parties have entered into. * * * By the terms of the policy the insurance here is made payable to Maydie Taylor Bullock, if living, or if not living to Eudolph Pink Bullock. As beneficiaries the wife and foster son are not on an equal footing. Eudolph’s interest is made contingent upon the death of the wife before that of the insured. She, however, is still living. The law of North Carolina does not regard imprisonment in state prison for a term of years as equivalent to legal death. * * *
£ £ * * *
“We think the language of the policy must control. Eudolph Pink Bullock’s interest in the policy of insurance on the life of Willie P. Bullock was made by its terms contingent upon the death of Maydie Taylor Bullock during the lifetime of the insured. That event did not happen, and the net proceeds of the insurance should thereupon be paid to the administrator of the estate of Willie P. Bullock, who took out the policy and paid the premiums thereon * *
*53 Conceding that the cases cited and quoted from were correctly decided on their facts, it is readily apparent that the amended beneficiary clause herein is radically different from any of the beneficiary clauses herein-before noted. Although, see Beck v. West Coast Life Ins. Co. (Cal.), 241 P. (2d), 544.
A reading of the entire amended beneficiary clause with which we are presently concerned and which is controlling in the disposition of this case clearly shows a marked solicitude on the part of the insured for James G. Michaels and Patricia Ruth Michaels, hereinafter referred to as the Michaels children, and a purpose and intent that, if living, they should benefit, in described circumstances, from the pioceeds of the policy.
Steven Michaels, the primary beneficiary and the murderer of the insured, is removed from consideration so far as any beneficial interest in the proceeds of the policy is concerned. He did not and could not properly assert any claim with respect to the policy, but the Michaels children are alive and the insured, speaking through the amended beneficiary clause, plainly says, “Upon the death of the survivor of the insured and said husband, any amount then remaining by the terms of the policy shall be apportioned to the insured’s stepchildren, James G. Michaels and Patricia R. Michaels * * * equally, or to the * * * survivor of them, if living.” (Italics ours.) In other words, the insured specifically directed that whatever amount remained under the policy when both she and her husband, Steven Michaels, were dead should be apportioned equally to the Michaels children, if they were alive.
That the insured did not want any of the insurance money to go to her estate and never intended that such result should happen if she died before the beneficiaries is evidenced by the last paragraph of the amended beneficiary clause, which reads:
*54 “Upon the death of the last survivor of the insured, said husband and said children, any amount then remaining by the terms of the policy shall be paid in one sum to the executors or administrators of such last survivor.”
By the language of the amended beneficiary clause, any distribution of the proceeds of the policy in issue to the Michaels children would have to await the actual death of Steven Michaels. "When that event transpires (and one of counsel for the guardian, upon oral argument of this case, stated without contradiction that it had), the proceeds of the policy which were surrendered and paid into court by the insurer and which are claimed for and on behalf of the Michaels children should be turned over to the legal guardian of such minor children in accordance with the judgment of the Court of Common Pleas.
Therefore, the judgment of the Court of Appeals is reversed and that of the Court of Common Pleas affirmed.

Judgment reversed.

Weygandt, C. J., Stewart, Middleton, Taft, Matthias and Hart, JJ., concur.