[Civ. No. 15477.   First Dist., Div. Two.   Sept. 18, 1953.]

Estate of SHULL H. DANIELS, Deceased.   ELIZABETH
T. BALDWIN et al., Appellants, v. JAMES P. HAR-
NEY, as Special Administrator, etc., Respondent.

John P. Doran for Appellants.

W. Urie Walsh and Doyle & Clecak for Respondent.

GOODELL, J.—This is an appeal from an order of November 29, 1951, settling the final account of the administrator and distributing the estate. Of the five appellants Elizabeth T. Baldwin was the only one who filed exceptions and objections. The will, admitted to probate by an order of November 22, 1950 (from which no appeal was taken), named Jennie Daniels, the widow, as sole legatee and devisee, and left $1.00 to anyone else who claimed to be an heir. Mrs. Baldwin was a daughter of the testator by a former marriage.

The principal attack on the decree of distribution is on the ground that the estate was not ready to be closed because the contest filed by Mrs. Baldwin had never been tried.

On October 13, 1948, the testator died and five days later his will, dated February 22, 1938, was filed for probate; on November 3, 1948, the Baldwin contest was filed. The grounds were (a) that decedent had not signed the document "for

any testamentary purpose whatsoever''; (b) unsoundness of mind; (c) undue influence and fraudulent representations. These representations were alleged to be that testator's wife had represented to him that if he would make his will in her favor she would make hers in his favor (mutual wills were in fact executed at the same time) but that she deprived him of the opportunity of taking under her will by killing him on October 13, 1948.

On November 24, 1948, the special administrator and Mrs. Daniels filed their answer to the contest.

On March 25, 1949, the contestant filed a memorandum to set cause for trial, wherein she demanded a jury trial. The date set was February 28, 1950. On February 20, 1950, an order was made dropping the case from the calendar ''for failure to deposit jury fees (Sec. 631 C.C.P.)''

Three days later a contest was filed by appellant John Daniels.

On September 12, 1950, notice of time of trial was served and filed by the proponent stating that both contests (Baldwin and Daniels) had been set for trial without a jury on October 17, 1950 at 2 p. m. in Department 9.

On September 29, 1950, Mrs. Baldwin filed a second memorandum to set cause for trial and demanding a jury trial. Proponent promptly moved to strike it from the files on the ground that the trial had already been set for October 17th. On October 24th the motion was granted, the order reciting that at the hearing of the motion there was no appearance on behalf of the contestant.

The business of the court did not admit of a trial on October 17th, the day set, and the trial was reset for November 14th, 1950 at 2 p. m. On October 18th a notice of trial (on November 14th) was served on the contestant by the delivery of a copy to the secretary of contestant's counsel.

On November 14th at 2 o'clock the case was called and counsel for the proponent directed attention to the service of the notice of trial just mentioned. Counsel for the contestant did. not appear. The court remarked that it was 2 o'clock, but that ''perhaps we could wait awhile.'' The record shows that a half hour recess was taken. The court then said: ''All right, if it was set and notice was given for to-day, there is nothing else to be done but to proceed—let the record show that there is no one here representing the contestants, and let the record show the statement of Mr. Clecak.''

The proponent then proceeded to prove the will. Both subscribing witnesses testified, and the proceeding was carried on with care and deliberation, the hearing covering 19 pages of transcript. The will was admitted to probate by an order dated November 22, 1950, which was over two years after the Baldwin contest was filed.

The record shows that although Mrs. Baldwin originally demanded a jury trial she failed to deposit jury fees within the time fixed by law. Section 631, Code of Civil Procedure, provides ''Trial by jury may be waived . . . in the manner following: . . . 5. By failing to deposit . . . a sum equal to the amount of one day's jury fees payable under the law . . . 10 days prior to the date set for trial. . . .''

Notice of time of trial was duly served, but, as already appears, on November 14th at 2 p. m. when the case was called for trial there was no appearance for the contestant.

In a will contest ''the contestant is plaintiff and the petitioner is defendant . . .'' (Prob. Code, § 371) which means of course that the contestant must be prepared to go forward with his proof, the burden being on him. In *Estate of Relph*, 192 Cal. 451, 459 [221 P. 361], the court says that ''the proponents are not called upon to submit any evidence until the contestants shall have produced some evidence legally sufficient to support their allegations. . . . If the contestants fail to produce such evidence, the decision of the contest must be against them, even though the proponents produce no evidence therein whatsoever [citation].''

The failure of contestant's counsel to appear left the case in the same position as that of a civil action where at the trial the plaintiff, the actor in the case, fails to show up.

Section 581, Code of Civil Procedure, provides that ''An action may be dismissed in the following cases: . . . 3 By the court, when either party fails to appear on the trial and the other party appears and asks for the dismissal . . .''

In the case of *Voyce* v. *Superior Court*, 20 Cal.2d 479, 484 [127 P.2d 536], the court says: ''It is clear that section 581 of the Code of Civil Procedure, providing for dismissals, is applicable to will contests. [Citations.] That rule follows from the provisions of section 1233 of the Probate Code stating that the provisions of part II of the Code of Civil Procedure constitute the rules of practice in probate proceedings in regard to matters of procedure not otherwise covered by the Probate Code. Section 581 of the Code of Civil Procedure is in part II thereof. It has recently been held by

this court that section 581 is applicable to proceedings to determine heirship, whose nature is quite similar to a will contest. (*O'Day* v. *Superior Court,* 18 Cal.(2d) 540 [116 P.2d 621].)''

*O'Day* v. *Superior Court* is a case where there was a dismissal of a petition to determine heirship where petitioners did not show up at the time set for hearing. The court (18 Cal.2d 545) said : ''. . . the court was authorized to render a judgment of dismissal against petitioners for their failure to attend.''

The case of *Horney* v. *Superior Court,* 83 Cal.App.2d 262, 267 [188 P.2d 552] discusses the same subject, citing, among other cases, *Estate of Somers,* 82 Cal.App.2d 757 [187 P.2d 433]. In both the Horney and Somers cases petitions for hearing were denied by the Supreme Court.

The order, from which no appeal was taken (Prob. Code, § 1240) left nothing outstanding or undisposed of as far as the contest was concerned.

So much for appellant's first and fifth grounds of opposition to the decree of distribution.

Appellant's second ground is that the ''administrator has not fully or at all collected or accounted for the assets of the estate . . .'' Appellants merely state this ground; they do not elaborate or argue it, or specify wherein there has been a failure to collect assets or account for them.

Appellants' third ground is that the granting of the petition for distribution ''would rob the said Elizabeth T. Baldwin of her right of recovering the moneys distributed by the decree . . . in the event that the judgments in Superior Court, No. 396815 and Superior Court No. 402310 . . . are reversed and set aside, both said judgments being now ·on appeal;'' This ground will be discussed presently under appellants' exceptions to the account.

Appellants' fourth ground is a repetition, stated in different words, of their second exception to the account relating to the payment of a family allowance to Jennie Daniels. It, too, will be discussed presently.

This brings us to the exceptions and objections to the final account, of which there are three.

The first is that three joint tenancy deposits are shown in the account as receipts, whereas the inventory shows they are no part of the estate.

The facts respecting these deposits are as follows:

On October 13, 1948, the day of testator's death, there

stood in joint tenancy in the names of himself and his wife Jennie Daniels, three savings accounts, one in Federal Savings & Loan Association, $4,733.47; one in the Morris Plan, $6,300, and one in Eureka Federal Savings & Loan Association, $6,722.21, aggregating $17,755.68. On that day the testator went to each of these institutions and withdrew all three deposits by obtaining cashiers' checks made out in favor of himself for the full amount standing in each deposit, which he endorsed in blank. Immediately after the death the special administrator sought and obtained possession of these three checks *as it was his clear duty to do,* and deposited them in his account as special administrator.

When the inventory was filed the administrator showed therein only the following property as belonging to the estate: 24 shares of the capital stock of Hearst Consolidated Publications, Inc., appraised at $535.99, and a 1940 Ford Sedan appraised at $250. However, he explained his possession of the proceeds of the three joint tenancy checks by an addendum to the inventory shown in the footnote.*

Appellants do not suggest any other means or method whereby these three checks aggregating $17,755.68 drawn to the

---

*"'At the time of the death of decedent, there was in the possession of his attorneys, cashiers' checks payable to decedent and endorsed in blank by him in the aggregate sum of $17,755.68. These checks represented moneys drawn out by decedent on the date of his death from the joint tenancy bank accounts of the decedent and his widow without the consent of his widow, Jennie Daniels. The checks were taken into the possession of the Special Administrator in order to safeguard the same.

"'It is the contention of Jennie Daniels that said moneys do not properly belong in the estate of decedent and that they belong to her as surviving joint tenant. This contention was sustained by the Superior Court of the State of California, in and for the City and County of San Francisco, in action numbered 396815, entitled: Jennie Daniels, Plaintiff, vs James Harney, as special Administrator of the Estate of Shull H. Daniels, deceased, Elizabeth T. Baldwin and John Daniels, Defendants.

"'In that case the Court made and entered its order decreeing that all of said moneys belong to Jennie Daniels, the surviving widow as the surviving joint tenant. Notice of appeal has been filed by children of decedent by a prior marriage. Said matter is also the subject of litigation in connection with some real property owned in joint tenancy by decedent and Jennie Daniels in that certain action numbered 402310 on the files of the Superior Court of the State of California, in and for the City and County of San Francisco, entitled: Jennie Daniels, Plaintiff, vs Elizabeth T. Baldwin, John Daniels, also known as John S. Daniels, also known as John Shull Daniels, George Lewis, John Lewis, Viola Lewis Mackin, James Harney, as Special Administrator of the estate of Shull H. Daniels, alias, deceased, and James Harney, as Administrator with the Will annexed of the estate of Shull H. Daniels, alias, deceased, Defendants.

"'The administrator makes no claim to said moneys.'"

order of the testator *and endorsed by him in blank* could have been safeguarded. As a matter of fact the petition for special administration shows that its purpose was so that the petitioner could endeavor "to recover said checks or a portion thereof, and if such appointment is not made the estate will be in danger of sustaining a very serious loss." Moreover, at the time the inventory was filed (as shown by the addendum) the three joint tenancy accounts were in litigation in two actions, in both of which the estate was a party defendant. One had been tried and was on appeal; the other not yet tried. Both judgments quieting the title of Jennie Daniels as surviving joint tenant of the three accounts were ultimately affirmed by this court.†

When the account was settled and the decree of distribution signed neither appeal had been decided. True, as said in *Estate of Delaney,* 110 Cal. 563, 567 [42 P. 981], "The fact that the property was in litigation might have been a reason for the court, in the exercise of its discretion, to delay a settlement of the account until the litigation should be determined . . ." but the superior court had already entered judgment that the three joint tenancy accounts belonged to Jennie Daniels as surviving joint tenant, and "there was no presumption that it would be reversed" (*Estate of Delaney, supra*). Even if there had been a reversal the money would still have been distributable to Jennie Daniels as sole legatee under the will (which had been admitted to probate a year before the distribution and no appeal had been taken). The decree of distribution recited that the pending appeals "should not in any way prevent the distribution of the estate of said decedent to the said Jennie Daniels . . . pursuant to the provisions of the said last will and testament . . ."

The joint tenancy money had come into the administrator's possession in an unimpeachable way, and it certainly had to be removed from the estate by some legal means or other. The decree of distribution solved this problem since, viewed either way, the joint tenancy money (or the $12,087.48 which then remained of it) belonged to Jennie Daniels. Appellants have not shown how they, or any of them, could have been entitled to any part of this money, under any theory.

---

†In action No. 396815 the affirmance was on May 28, 1952, about 16 months after the inventory was filed (*Daniels* v. *Harney,* 111 Cal.App.2d 400 [244 P.2d 773]). In No. 402310 the affirmance was on January 23, 1953, almost two years after the inventory was filed (*Daniels* v. *Baldwin,* 115 Cal.App.2d 487 [252 P.2d 351]). A petition for hearing was denied by the Supreme Court in the latter case.

Appellants' second exception to the account (and their fourth ground of attack on the petition for distribution, discussion of which was deferred) is an attack on the family allowance of $300 a month which was paid for 17½ months, aggregating $5,250.

The ground of this exception is that it is a "metaphysical impossibility for said administrator to pay out as family allowance moneys which he swears in his inventory and appraisement he does not have, and which he swears he never did have." Obviously the $5,250 could not have been paid out of the meager $535.99 of Hearst stock and a $250 Ford— making $785.99; it must necessarily have been paid out of the joint tenancy money in the administrator's possession and which, under any view, was really Jennie Daniels' money. Under appellants' own argument *the true assets of the estate were not at all depleted by the family allowance.*

Over and above that, the order granting the family allowance was an appealable order (Prob. Code, § 1240) but no appeal was taken. In *Estate of Roberts,* 27 Cal.2d 70 [162 P.2d 461], which, also, was an appeal from a decree settling an account and for distribution, appellants attacked an order for family allowance, just as appellants do now on the same kind of appeal. The court said, page 76 "Having failed to take an appeal within the time prescribed or to petition for the modification of the order after the filing of the inventory, appellants cannot attack the order collaterally in the present proceeding. [Citations, *including 11A Cal.Jur. p. 542*]." The Roberts case was cited in respondent's brief, but neither it nor the subject of family allowance is touched on in appellants' closing brief.

Appellants' third exception to the account is merely a restatement of their first and second exceptions to the account, already discussed.

And, finally, the record shows that at the time set for hearing the administrator's account and petition for distribution the appellant Elizabeth T. Baldwin failed to appear in person or by counsel to present and press before the court the exceptions and objections which she had filed. The account and petition were filed on November 6, 1951; Probate Code, section 1200, requires the clerk to give at least 10 days' notice by posting, and it requires the court to make a finding of due notice. In its order of November 29, 1951, the court found "that due and legal notice of the hearing of said account

and petition has been duly and legally given to all persons interested in the estate of the said decedent for the time and in the manner prescribed by law . . .''

The hearing was set for November 21, 1951. On November 19th the exceptions and objections were filed. When the matter was called on the 21st, counsel for Mrs. Baldwin did not appear. The court of its own motion continued the hearing to the 23d with direction to the administrator's counsel to try in the meantime to get in touch with adversary counsel. On the 23d counsel again failed to appear and the administrator's counsel reported that he had personally served a notice on his adversary by putting it under the door of his office—nobody being present therein. The court then proceeded with the hearing, approved the account and ordered distribution.

The failure of appellants to appear at the hearing of the account and for distribution would seem to be a sufficient reason, by itself, for the affirmance of the order and decree appealed from. Mrs. Baldwin had filed, only two days before, the exceptions and objections just discussed in detail, but she did not see fit to appear and present them to the court (see authorities already cited).

One of the grounds of the Baldwin contest was that the will was executed under the representation made by Jennie Daniels to her husband ''that if he would sign said purported will she would give him an opportunity by will to succeed to her entire estate'' but that she ''deprived decedent of such opportunity by killing said decedent October 13, 1948.'' It is also alleged that the coroner's jury at the inquest into decedent's death returned a verdict that ''Said decedent came to his death at the hands of Jennie Daniels and we, the jury, charge the said Jennie Daniels with the crime of murder.'' Mrs. Daniels was tried for murder but convicted of manslaughter. Appellants argue that the Baldwin contest raised the defense that she could not qualify as an heir or devisee of decedent because he had met death at her hands.

In *Estate of Kirby* (1912), 162 Cal. 91 [121 P. 370, Ann.Cas. 1913C 928, 39 L.R.A.N.S. 1088], the Supreme Court had before it a piece of legislation enacted seven years before, section 1409, Civil Code, which read: ''No person who has been convicted of the murder of the decedent shall be entitled to succeed to any portion of his estate; but the portion thereof to which he would otherwise be entitled to succeed descends to the other persons entitled thereto under the provisions of this title.'' Section 258 Probate Code as it now reads is

substantially the same as the original section. The court held that a person convicted of manslaughter did not come within the provisions of the section. *Estate of Lysholm,* 79 Cal. App.2d 467 [179 P.2d 833] cites several later cases on the same subject. The Kirby case is a sufficient answer to appellants' contention, but they invoke the broader ground that "No one can take advantage of his own wrong" (Civ. Code, § 3517) and in that connection stress questions of morality and public policy. The Kirby case supplies the following answer to those arguments: "Whether this accords with natural right and justice is a question upon which we cannot enter. The right of inheritance in this state does not depend upon the ideas of court or counsel as to justice and natural right. The entire matter is in the control of the legislature and depends wholly upon the provisions of the statute, regardless of our notions of natural right and justice. (*Estate of Wilmerding,* 117 Cal. 284 [49 Pac. 181] ; *Sharp* v. *Loupe,* 120 Cal. 91 [52 Pac. 134, 586] ; *Estate of Porter,* 129 Cal. 88 [79 Am.St.Rep. 78, 61 Pac. 659].)"

"The right of inheritance . . . *as well as the right of testamentary disposition* are entirely within the control of the state legislature and are subject only to the conditions prescribed by such body [citations; emphasis added]." (*Estate of Scott,* 90 Cal.App.2d 21, 23 [202 P.2d 357]). The Legislature has not seen fit in almost 50 years since the enactment of section 1409, Code of Civil Procedure (now Prob. Code, § 258) to extend the rule which that section announces.

*Beck* v. *West Coast Life Ins. Co.,* 38 Cal.2d 643 [241 P.2d 544, 26 A.L.R.2d 979], which appellants cite, is not in point since it involved a policy of life insurance.

The order and decree appealed from are affirmed.

Nourse, P. J., and Dooling, J., concurred.

A petition for a rehearing was denied October 16, 1953.