Phyllis BAEKGAARD, formerly Phyllis Irene Carreiro, Appellant,

v.

Genee M. CARREIRO, Irene G. Carreiro, Individually and as Administratrix of the Estate of George S. Carreiro, Deceased, and Wells Fargo Bank & Union Trust Company, Appellees.

No. 14750.

United States Court of Appeals Ninth Circuit.

Oct. 3, 1956.

Rehearing Denied Dec. 8, 1956.

Alfred J. Smith, Cyril Viadro, San Francisco, Cal., for appellant.

William T. Joyce, Palo Alto, Cal., for appellee Irene G. Carreiro.

Reginald G. Hearn, San Francisco, Cal., for appellee Genee M. Carreiro.

Before STEPHENS, BONE and CHAMBERS, Circuit Judges.

STEPHENS, Circuit Judge.

This action arose out of conflicting claims to the proceeds of three life insurance policies in the total face amount of $25,000.00 issued by the New England Mutual Life Insurance Company on the life of Dr. George S. Carreiro, deceased, a resident of California at the time of death. The action was filed by New England Mutual Life Insurance Company, a Massachusetts corporation, as an action in interpleader under Section 1335 of Title 28 United States Code. The issue in the case is how shall the insurance benefits be awarded as to three women and as to the assured's estate; Genee M. Carreiro, the first and divorced wife of the assured (a citizen of California); Irene G. Carreiro, his second wife (a citizen of California) and Phyllis Baekgaard, assured's daughter (a citizen of Illinois). These three were named as defendants and the proceeds from the policies were deposited in court. Wells Fargo Bank & Union Trust Company (a California corporation) intervened as the executor of the Last Will and Testament of the assured.[1]

Dr. Carreiro and Genee M. Carreiro were married in 1927 and *Phyllis* Irene Carreiro, now known as *Phyllis* Baekgaard, was the sole issue.

The trial court adjudged a division of the policy proceeds among the claimants as an equitable solution of the problem and *Phyllis* Irene Carreiro, the daughter appealed. The insurance policy issued during the coverture of the doctor and *Genee* M. Carreiro with *Genee,* the wife, as primary beneficiary and *Phyllis* as the secondary beneficiary in the event that *Genee* predeceased Dr. Carreiro. If both primary and secondary beneficiaries predeceased Dr. Carreiro, the proceeds were to be payable to the Executor of his Will. In August, 1951, the doctor and *Genee* entered into a written property settlement. We have set out in part the text of the agreement in Note 2.[2]

1. Another policy having a face benefit of $5,000.00 with Prudential Life Insurance Company of America was the subject of a separate action which is now on appeal before this court (No. 14,878) but in which further proceedings have been stayed pending determination of this appeal.

2. The text of the settlement—in part—is as follows:
"Whereas, the parties hereto are minded to forever adjust and settle any and all community property rights, property rights, rights to support or maintenance, and other matters between them;

"Now, therefore, it is agreed that in consideration of the mutual promises, agreements and covenants contained herein, it is covenanted, agreed and promised by each party hereto, to and with the other party hereto, as follows:
* * * * *

An interlocutory decree of divorce was adjudged between the doctor and *Genee* and the final decree was adjudged the following August. The doctor and *Irene* Carreiro were married in December of 1952. Dr. Carreiro died January, 1954. The insurance policies in suit were in good standing and they were specifically mentioned in the property settlement between the assured and *Genee,* the first wife.

The trial judge expressed his disbelief in respect of testimony of conversations with Dr. Carreiro relating to the latter's intentions as to the beneficiary of the policies in suit and held that the evidence before the court was inconclusive and contradictory and ordered the proceeds of the policies to be equally divided among the three women claimants and the bank as Executor.

Appellant argues that she is entitled to the entire proceeds since the primary beneficiary, *Genee* Carreiro, as a legal result of the property settlement agreement waived any expectancies in the policies, and thus she, *Phyllis,* as named secondary beneficiary became entitled to

"Fourth: That said parties hereto each hereby waive any and all right to the estate of the other left at his or her death and forever quitclaim any and all right to share in the same of the other, by the laws of succession, and said parties hereby release one to the other all right to be administrator or administratrix or executor or executrix of the estate of the other, and hereby release and waive all right to inherit under any will of the other, and each of the said parties hereby waive any and all right of homestead in the real property of the other, probate or otherwise, and said parties hereby waive any and all right to the estate or any interest in the estate of the other for family allowance by way of inheritance, and from the date of this agreement to the end of the world said waiver of the other in the estate of the other party shall from the date of this agreement be effective and they shall have all the rights of single persons and maintain the same relation of such toward each other.

"Fifth: The husband and wife shall accept the provisions herein made for each of them in full satisfaction of the right of either to the community property or alleged separate property of either of them.

"Sixth: The property of the parties hereto shall be divided by said parties as follows:

"1. The wife shall receive and be entitled to all that real property situated in the City and County of San Francisco, State of California, described as follows: (described).

\* \* \* \* \*

"7. The husband shall receive and be entitled to the insurance policies hereinafter listed, free and clear of any claims of the wife thereto.

"Policy No. 820167 in the sum of $10,-000, New England Mutual Life Insurance Company.

"Policy No. 842502 in the sum of $15,-000.00, New England Mutual Life Insurance Company.

"Policy No. 725936 in the sum of $5,-000.00, New England Mutual Life Insurance Company.

"Policy No. 725937 in the sum of $5,-000.00, New England Mutual Life Insurance Company.

"Policy No. 5243932 in the sum of $5,-000.00, Prudential Insurance Company of America.

"Policy No. 1153064 in the sum of $15,-000.00, New England Mutual Life Insurance Company.

"Seventh: The parties shall, at any time or times hereafter, make, execute and deliver any and all, such further or other instruments, papers, or things as the other of the said parties shall require for the purpose of giving full effect to these presents and to the covenants, provisions and agreements hereof.

\* \* \* \* \*

"Ninth: That each of said parties fully and clearly understands each and every of the provisions herein contained, and the legal import and results thereof, and of the whole thereof, and that each of the parties has read this agreement in full and executes the same freely and voluntarily, and not under duress, menace, fraud or undue influence, coercion or intimidation of the other party, or of any other person or persons whatsoever, and that in any action between the parties now pending or hereafter to be commenced, that this agreement shall be offered in evidence for the approval of the court, and shall be the measure of their respective rights, and that the provisions hereof shall be incorporated in the, or any, decree therein rendered, such order containing a recital that it is predicated upon the terms of this agreement and not upon statutory authority."

**462**

the proceeds of the policies in suit. In order to answer this contention, it is necessary to resolve the following questions:

(1) Did the primary beneficiary, *Genee* Carreiro, waive or relinquish her expectancy as a beneficiary under the policies by virtue of the property settlement agreement entered into with the deceased?

(2) If *Genee* Carreiro did so waive or relinquish such expectancy, does that fact have the legal effect of placing the secondary beneficiary in a position to take the proceeds even though the primary beneficiary is still living, or does it mean that the proceeds go into the assured's estate?

(3) In determining the legal effect of a waiver of expectancies under the facts of this case, the law of what jurisdiction is controlling?

### Legal Effect of the Property Settlement

■ ■ The position of a beneficiary in an insurance policy subject to change by the insured is similar to that of a beneficiary of a Will, a mere expectancy dependent on designation at the time of the insured's death. Grimm v. Grimm, 26 Cal.2d 173, 176, 157 P.2d 841. Where a property settlement agreement covers *all* of the property of the parties, and the wife, in accepting certain provisions for her benefit, fully releases the husband with respect to all other property, such release ordinarily would cover and include her interest as the designated beneficiary on an insurance policy; but where the language is not broad enough to encompass such an expectancy or an intent appears to exclude such rights as a present part of the settlement, the wife may still take as a beneficiary if the policy so provides. Thorp v. Randazzo, 41 Cal.2d 770, 264 P.2d 38, 40; Miller v. Miller, 94 Cal.App.2d 785, 789, 211 P. 2d 357. For cases construing various property settlement agreements see: Thorp v. Randazzo, 41 Cal.2d 770, 264 P.2d 38; Grimm v. Grimm, 26 Cal.2d.

173, 157 P.2d 841; Meherin v. Meherin, 99 Cal.App.2d 596, 222 P.2d 305; Prudential Insurance Co. of America v. Quay, D.C., 115 F.Supp. 63; United Benefit Life Insurance Co. v. Price, 46 Wash.2d 587, 283 P.2d 119; In re Buchman's Estate, 132 Cal.App.2d 81, 281 P.2d 608.

■ It is evident, that in our case, the trial judge construed the property settlement agreement as effecting a relinquishment or waiver of any expectancies that *Genee* Carreiro had or may have had in the future in the policies. Conclusion of Law I is in part:

"Pursuant to the terms and provisions of the aforesaid policies and the terms and provisions of the property settlement agreement executed by and between Genee M. Carreiro and said George S. Carreiro as supplemented by events subsequent thereto, the proceeds of all policies were payable to neither Genee Mignon Carreiro, the designated beneficiary, nor to Phyllis Baekgaard, the secondary beneficiary. * * *"

Since *Genee* Carreiro was living at the time of George S. Carreiro's death and she was of record as the primary beneficiary of the policies in suit, it is clear that the trial judge could only refuse to award the proceeds to her if she had originally waived her expectancies under the policies unless there was convincing evidence that showed a different intent. It would appear that *Genee* Carreiro does not claim that she did not by the agreement waive her expectancies under the policies, but now claims the proceeds were later given to her, since in her "Answer to Pleading in Intervention" in paragraph II she states:

"* * * Said answering defendant and cross-complainant avers that at no time *since* receipt of notice of the *gift* of said insurance policies by the assured has she waived any rights to receive the proceeds therefrom." (Emphasis supplied.)

Whether *Genee* did so concede or did not, if she had affirmatively shown that

such was the intent of the insured, it would have been the duty of the trial judge to award the proceeds to her. But the trial judge specifically stated that he was unable to ascertain what was the deceased's intent because, as the trial judge held, of the inconclusive and conflicting evidence and, therefore, the resort to what amounted to a compromise judicial adjustment of the issue. In this posture of the case, it was *Genee's* burden to convince the court that Dr. Carreiro intended that she should receive the insurance proceeds. She did not meet this burden!

■ We agree with the trial judge that *Genee* Carreiro by the property settlement waived and relinquished all right to the insurance proceeds. The policies were specifically listed and described and obviously were one of the bargaining elements between *Genee* Carreiro and Dr. Carreiro as to a division of their property. We note also that other things were "waived" under the agreement such as the right of each to take by Will from the other or to share in the other's estate, or to act as executor or executrix or administrator or administratrix. These provisions were held to be important considerations in interpreting the agreement in Meherin v. Meherin, supra, and Thorp v. Randazzo, supra. It was stated in the agreement that the husband was to receive the policies "free and clear of *any claims* of the wife thereto". (Emphasis supplied.) The only possible defect in the agreement was the failure to expand the meaning of "any claims" to include an "expectancy" under an insurance policy. But a disposition of *all* property rights and "other matters" was clearly contemplated by the parties. As was said in Meherin v. Meherin, 222 P.2d at page 306:

"The property settlement agreement was quite comprehensive and clearly established that a complete and final settlement was intended."

In our case not only was there made mention of community property rights, but also of "property rights" and "rights to support and maintenance" and "other matters between them". The fact that there was a named secondary beneficiary is not in itself controlling, but we think that it is an element worthy of consideration in determining what was the intent of the parties to the agreement when it was executed. Here it can be argued that the deceased did not intend to give up valuable property to his wife as he did do and in addition to create a strong possibility that his divorced wife would also get the proceeds of the policies to the exclusion of his own daughter. Thus, it is certain that the court did not specifically decide the issue as to whether or not it was the insured's intention that *Genee* should take the proceeds of the insurance notwithstanding her waiver and relinquishment of any right to do so by the terms of the property settlement agreement. However, it is implicit in his decision and judgment that he disbelieved the evidence as to the claim of *Genee* that he gave her the right to the proceeds subsequent to the date of the property settlement. It seems, therefore, that *Genee* was not in a position to receive any part of the proceeds.

■ It can be argued from the fact that the doctor sent a copy of the agreement to the company that he wanted to inform the company that a change in beneficiary had been accomplished. It was not necessary for him to send the agreement to the company in order to divest his first wife of her community property interest. That divestment was complete when the agreement was executed and incorporated into the divorce decree. We hold that at the time of the execution of the agreement there was a waiver by *Genee* Carreiro of any and all interests in the policies.

### Effect of Waiver on Secondary Beneficiary

■ In summation to this point: *Genee*, the primary beneficiary is out of the issue. *Phyllis*, the daughter and secondary beneficiary, bases her claim to all of the insurance proceeds upon the

contention that she succeeds to the vacancy and in effect becomes the primary beneficiary. The trial court's view as to such a claim is adverse and states:

"The condition precedent to the payment of the proceeds to Phyllis Baekgaard * * * to wit, the death of the primary beneficiary, not having been fulfilled as of the death of the assured, said secondary beneficiary is not entitled to the proceeds of the aforesaid policies."

In this we think the trial judge read the policies with too much of an eye on the strictly literal wording and in our opinion the Supreme Court of California supports us. That California law rules this case is not doubtful and we treat that jurisdictional question in the margin.[3]

### California Law

■ In Beck v. West Coast Life Insurance Co.,[4] 38 Cal.2d 643, 241 P.2d 544, 26 A.L.R.2d 979, the Supreme Court of California held that where a life policy stated that the proceeds should be payable to a secondary beneficiary if the primary beneficiary predeceased the insured, the insured clearly indicated her desire and intent that any interest her estate might have in the proceeds should be subordinate to the interest of the secondary or alternative beneficiary, and hence where the primary beneficiary murdered the insured and was precluded from receiving the proceeds under the public policy of the State of California, the secondary or alternative beneficiary was entitled to the proceeds as against the insured's estate. We think the California Supreme Court's reasoning is applicable to our case. We quote from the cited case, 241 P.2d at page 546:

"Because the beneficiary clause of a life insurance policy in which the insured has reserved the right to change beneficiaries is donative and testamentary in character, [citing cases] the intent of the insured as expressed by the language that she used should be given effect so far as possible. * * * Although her expressed intent that her husband

---

3. The insurance policies were issued by a Massachusetts corporation and the benefits or face amounts were payable at Boston, Massachusetts. The policies provided that premiums were payable either "at the Home Office, or they may be paid to an agent of the Company * * *". Apparently two of the policies were applied for and delivered in Honolulu, Hawaii, in 1932, and the other policy was applied for and delivered in California in 1942 after Dr. Carreiro had moved to San Francisco. Premiums were paid on all three policies to an agent of the company in San Francisco for a number of years, and the policies were also serviced at the San Francisco office of the company.

Section 1646 of the Civil Code of California provides that "A contract is to be interpreted according to the law and usage of the place where it is to be performed * * *". Appellees argue that the place of performance is Boston, Massachusetts, the place where the face amount of the policy is to be made, and therefore, California law is inapplicable. Appellant argues that under the facts of this case performance was in part at least in California and therefore, California law is applicable. We agree with appellant.

This court held in Ostroff v. New York Life Ins. Co., 9 Cir., 104 F.2d 986, 988, that California law was applicable where "in the ordinary course the repeated payments of premiums, constituting by far the greater number of performances of its terms, are to be performed in California." In that case the benefits of an insurance policy were payable in New York, but premiums were payable "'at the Home Office of the Company or to an authorized agent of the Company * *.'" For California cases in accord, see: Braun v. New York Life Ins. Co., 46 Cal.App.2d 335, 115 P.2d 880; Blair v. New York Life Ins. Co., 40 Cal.App.2d 494, 104 P.2d 1075. See also: New York Life Insurance Co. v. Waterman, 9 Cir., 104 F.2d 990.

Our case is similar to the Ostroff case. In addition, one policy was delivered in California and all policies were being serviced in California for a number of years. We hold California law to be controlling and binding on this and the District Court.

4. See also: Neff v. Massachusetts Mut. Life Ins. Co., 1952, 158 Ohio St. 45, 107 N.E.2d 100, and Manufacturer's Life Ins. Co. v. Moore, D.C.Cal.1953, 116 F.Supp. 171.

receive the proceeds cannot be given effect, the policy names the one she wished to take if her husband could not. It stated that the proceeds should be paid to the alternative beneficiary, if the primary beneficiary predeceased the insured. Thus, in the type of disability that would naturally be anticipated by the insured, the alternative beneficiary was preferred over the estate of the insured. In this case there occurred the only other possible contingency in which the primary beneficiary would be under a disability equivalent to actual death. The insured has clearly indicated her intent that any interest her estate might have in the proceeds of the policy should be subordinate to the interest of the alternative beneficiary. This intent it recognized by a holding that the alternative beneficiary may recover the proceeds. * * *"

In the recent case of Carter v. Carter, Fla., 88 So.2d 153, June 8, 1956, the insured was allegedly killed by his wife who was the primary beneficiary, and one of the questions for determination was whether a contingent beneficiary should receive the proceeds of the life policy or the insured's estate, if it be found that the wife unlawfully and intentionally killed the husband. The Florida Supreme Court expressly referred to and approved the California case of Beck v. West Coast Life Ins. Co., supra, 38 Cal.2d 643, 241 P.2d 544, 26 A.L.R.2d 979, and in so doing made the following comments, 88 So.2d at page 160:

> "We must assume that the word 'beneficiary' as used in a life insurance policy comprehends beneficiary in its broadest legal aspect and in that sense it necessarily must be considered as having reference to the survival of a *beneficiary eligible to take.* * * *" (Emphasis supplied.)
>
> " * * * We prefer to adhere to what we consider to be the better

rule which is the one that appears to give effect to the intent of the insured by paying the proceeds to the beneficiary first in priority *who is eligible under the law to receive the money.* In this case it would be the respondent * * *." (Contingent beneficiary.) (Emphasis supplied.)

In our case the policies additionally show such an intent as they stated that if primary and secondary beneficiaries predeceased the insured, *then* the proceeds should go to the estate! But see: Beck v. Downey, 9 Cir., 191 F.2d 150 and 9 Cir., 198 F.2d 626. In that case we noted that California law was *not* controlling after the Supreme Court of the United States had remanded the case to this court for a reconsideration in light of the California case of Beck v. West Coast Life Insurance Co., supra. California law was held not to be controlling as the insurance policy in issue there was neither made, executed, delivered nor to be performed in California. No premiums had been paid in California. That is not the case that we now have before us. We are, therefore, bound to decide this case in light of the California Supreme Court decision. We think the California court would reach the same result that was reached in Beck v. West Coast Life Ins. Co., supra, and award the proceeds to the alternative or secondary beneficiary, Phyllis Baekgaard.

We note that the decision of this court in Beck v. Downey is distinguishable from the California case in one decisive respect and that is that in the prior case before this court the secondary beneficiary was the mother of the murderer, while in the California case the secondary beneficiary was merely a friend of the murdered wife. The fact that in Beck v. Downey, the alternative beneficiary was the mother of the murderer may have greatly influenced the decision of this court. This is evident as shown by the concurring opinion of Judge Fee in the case, 198 F.2d 626.

When the insured made the beneficiary his wife and then the daughter upon the wife's death, what was the importance of the "death" event? It was a mere mark that when she could not take, the daughter should. *The event of importance was the inability of the wife to take.* That that event was brought about earlier and by agreement of the parties should and does leave the secondary beneficiary the prime one.

We hold that the entire proceeds of the policies should go to *Phyllis* Baekgaard, the daughter of the deceased.

Judgment reversed with instructions to proceed in accordance with this opinion.

Reversed and remanded.