Ruth Vick O'BRIEN, Appellant,

v.

Thelma Rosedith Todgham Vick ELDER, and United States of America, Appellees.

No. 16630.

United States Court of Appeals Fifth Circuit.

Dec. 11, 1957.

Rehearing Denied Jan. 29, 1958.

Arthur B. Cunningham, Cunningham & Weinstein, Miami, Fla., for appellant.

Albert L. Weintraub, O. B. Cline, Jr., Asst. U. S. Atty., Miami, Fla., for appellees.

Before RIVES, TUTTLE and BROWN, Circuit Judges.

TUTTLE, Circuit Judge.

This litigation arises from a controversy over the proceeds of three life insurance policies between the administra-

trix of the insured's estate and the named beneficiary. The plaintiff—the administratrix—appeals from a summary judgment awarding the proceeds to the beneficiary, Mrs. Elder—the individual defendant below.

On December 1, 1955, the insured and the defendant, who had been married in 1944, were granted a final divorce by the Circuit Court of Dade County, Florida. During his marriage to the defendant, the insured had obtained two commerical life insurance policies and one National Service Life Insurance policy, each designating the defendant as beneficiary. He continued in possession of these policies after the divorce, and after his accidental death on February 25, 1956, they were found among his effects, each still naming the defendant as beneficiary.

The probate court ordered the policies turned over to the defendant. She has been paid the proceeds of the two commercial policies. The Veterans Administration determined administratively that she was entitled to the proceeds of the National Service policy, but withheld payment pending an appeal by the administratrix from the disallowance of her claim for the money.

The present appeal grows out of a suit by the administratrix contesting Mrs. Elder's right to the proceeds of the policies. Alleging diversity of citizenship against Mrs. Elder and the jurisdiction conferred upon the district courts by 38 U.S.C.A. §§ 445 and 814 against the United States, plaintiff brought this action to (1) impose a constructive trust upon the proceeds of the two commercial policies which have already been paid to Mrs. Elder and (2) to compel the United States to pay the proceeds of the National Service policy to her rather than to Mrs. Elder.[1]

Plaintiff advanced two theories to justify this relief: (1) That the insured during the interval between his divorce and death had accomplished a revocation of the defendant's designation as beneficiary; (2) That a separation agreement incorporated in the divorce decree effected a relinquishment by the defendant of her interest in the proceeds of the insurance.

Mrs. Elder answered and moved for summary judgment.[2] In her pleadings and affidavits she denied that the insured at any time before his death evinced an intention or did any overt act to change the beneficiary of the policies, and, in the second place, she denied that she had waived her rights to the proceeds by the separation agreement or any other act. The plaintiff filed counter affidavits in support of her case. The trial court, finding that the pleadings and affidavits presented no genuine issue concerning any material fact, determined as a matter of law that the defendant was entitled to the proceeds and entered summary judgment in her favor.

In appealing, the plaintiff contends that she should have been permitted to try the question whether the insured had revoked the defendant's designation as beneficiary. The policy requirements for effecting a change of beneficiary were not complied with. The plaintiff invokes the principle that a court of equity will complete a contemplated change of beneficiary if the insured has manifested a desire and intent to change the beneficiary, and, although falling short of the policy requirements, has done everything reasonably within his power to accomplish the change, leaving only ministerial details to be performed by the company (see Bradley v. United States, 10 Cir., 143 F.2d 573, certiorari denied 323 U.S. 793, 65 S.Ct. 429, 89 L. Ed. 632). We must agree with the trial court that as a matter of law this principle does not apply here.

Plaintiff offered to prove that in conversations before his divorce, the insured had stated that of three alternative settlements proffered by the defendant he

1. The United States after the commencement of the suit disclaimed the proceeds of the Government policy and announced its intention to deposit the money with the Court.

2. Fed.Rule Civ.Proc. rule 56, 28 U.S.C.A.

had chosen a cash settlement so that there would be a complete break between them, and that after his divorce the insured had stated that he wanted to make a new will and change the beneficiaries on his insurance. It was also shown that when the insurance policies were found among the insured's possessions each had attached to it the form for changing the beneficiary and that attached to the outside of the envelope containing the policies was a note in the insured's hand reminding him to make a new will and "Change Ins. Policy Beneficiaries." Finally, plaintiff offered to prove that about a month before his death the insured had arranged to meet one of the affiants so that she could assist him in changing the designation in the policies, but that they had missed each other at the appointed place and that on the night before his death, the insured had again asked the affiant if she would go with him during the following week to change the insurance but that no date had been set to do this.

The court below found that this evidence was wholly devoid of a showing of any affirmative act on the part of the insured in furtherance of an intention to revoke or change the beneficiary of the policies. A mere intent to change a beneficiary is not enough (Mitchell v. United States, 5 Cir., 165 F.2d 758). We find that the plaintiff's evidence as a matter of law failed to furnish a ground upon which a reasonable mind could conclude that the insured had done what was required to exercise his right to change the beneficiary of the policies. The affidavits disclose at most only preparation for a changing of beneficiary and not, for a man in the insured's circumstances, everything that was reasonably within his power to do. Cf. Travelers Ins. Co. v. Davis, D.C.S.D.Fla., 102 F.Supp. 5.

This issue was correctly decided in the defendant's favor.

The plaintiff, however, further asserts that summary judgment should not have been granted for appellee on the question whether the separation agreement accomplished a relinqishment of the defendant's interest in the proceeds of the insurance policies. This contention requires us to determine whether genuine factual issues are raised in the application of the agreement to this dispute and, if not, whether the defendant is entitled to judgment under the relevant principles of contract law.

It is generally true that divorce alone does not automatically divest the wife of the proceeds of life insurance in which she is the named beneficiary (29 Am.Jur., Insurance, § 1309). The beneficiary's interest may be terminated, however, by an agreement between the parties which may reasonably be construed as a relinquishment of the spouse's rights to the insurance (Ibid.). Separation agreements and property settlements made in good faith are valid and legal and are to be construed and interpreted as are other contracts (Underwood v. Underwood, Fla., 64 So.2d 281). Unless doubt about the meaning of the contract requires a resort to extrinsic evidence (St. Lucie County Bank & Trust Co. v. Aylin, 94 Fla. 528, 114 So. 438) the construction of a written contract is for the court (City of Leesburg v. Hall & Harris, 96 Fla. 186, 117 So. 840). In the latter event, the issue of interpretation presents no genuine issue of fact, but a question of law only (see Dale v. Preg, 9 Cir., 204 F.2d 434).

The court below in granting summary judgment rejected the plaintiff's claim based upon the separation agreement because the stipulation makes no mention of insurance. The complete text of the agreement is reproduced in the margin.[3]

---

3. "It is hereby stipulated and agreed by and between the parties hereto that in the event a final decree of divorce is entered in the above styled cause, that the same may contain the following provisions:

"1. That the defendant shall pay to the plaintiff the Sum of Twenty Thousand ($20,000.00) Dollars in the following manner, to-wit: Eight Thousand ($8,000.00) Dollars at the time of the entry of the final decree; Two Thousand

It is our view however, that while correctly determining that the construction of this agreement did not raise factual questions, the court erred in concluding that the agreement was not intended to and did not embrace the proceeds of the insurance policies. When we consider the condition of the parties, the object which they had in view and the nature of the agreement, all of which can be done within the four corners of the instrument itself, we think that it is plain that the defendant relinquished any interest in the proceeds of her husband's insurance.

The contract recites that it was entered in contemplation of a divorce between the parties and although executed before the actual decree was issued, it was intended to be the final property settlement between the parties and to be incorporated into the decree. The completeness of its provisions demonstrates the intention to effect a complete settlement as well as a final one. It calls for the payment of a lump sum of $20,000.00 by the insured to the defendant. Specific provisions deal with the allocation of the real property jointly owned by the parties and with their joint bank account. It is provided that after the divorce each party shall retain the personalty that each then owned individually. Finally, it is provided in paragraph 7:

> "That upon the performance of all the conditions contained in this stipulation, neither party hereto shall have *any claim* on the other party of *any kind whatsoever*, including that for alimony." (Emphasis supplied.)

The comprehensiveness of the term "claim" has been noted by the courts (see Baekgaard v. Carreiro, 9 Cir., 237 F.2d 459, certiorari denied 352 U.S. 1004, 77 S.Ct. 564, 1 L.Ed.2d 549). We find in reading this paragraph in the light of the entire agreement and the object which it expresses, the intention by each party to release and relinquish any and all interests derived from or held as against the other.

The policies here, as we have noted above, reserved to the insured the right to change the beneficiary. It is generally held, in view of this reserved power, that the beneficiary's interest in such policy must be characterized as an expectancy only. This is clearly the rule in Florida. Moon v. Williams, 102 Fla. 214, 135 So. 555. Where the right to change the beneficiary is reserved, the insured remains in effect the real owner of the policy (Vance, Insurance, § 108 (3d ed. 1951); Cf. Mutual Ben. Life Ins. Co. v. Swett, 6 Cir., 222 F. 200). The beneficiary's interest though only an expectancy is therefore derived from the insured and is a claim subsumed under the release in this agreement by the wife of "any claim [against the husband] * * of any kind whatsoever." Where the right to change the beneficiary is not reserved the beneficiary's interest becomes vested when the policy is issued. The beneficiary in effect becomes the real owner of the policy and any claim he may have is against the insurance company and not the insured. In that event, of course, the beneficiary's interest is not embraced by a separation agreement pro-

---

($2,000.00) Dollars on January 5, 1956, and Ten Thousand ($10,000.00) Dollars on May 5, 1956.

"2. That upon the payment of the entire said Twenty Thousand ($20,000.00) Dollars, the plaintiff shall convey to the defendant, all of her right, title and interest in and to any real property jointly owned by the parties hereto.

"3. That the defendant shall transfer to the plaintiff the title to the 1949 Packard Sedan automobile now in his name.

"4. That the defendant shall retain all monies in the joint special checking account of the parties in the First National Bank of Miami, together with the safety deposit box in said bank.

"5. That all stocks, bonds, deposits and other intangibles in the individual names of the parties hereto shall be retained by said party.

"6. That the nursery stock located at the home of the parties hereto, shall become the sole property of the defendant.

"7. That upon the performance of all of the conditions contained in this stipulation, neither party hereto shall have any claim on the other party of any kind whatsoever, including that for alimony."

viding for the release by the parties of all claims against each other (see John Hancock Mut. Life Ins. Co. of Boston, Mass. v. Heidrick, 135 N.J.Eq. 326, 38 A.2d 442). Here, however, it is apparent that the claim with respect to the insurance exists between the parties to the agreement. We therefore find that the proceeds of these policies are covered by the language of this paragraph of the agreement.

The judgment of the trial court is reversed and the case remanded for action not inconsistent with the views here expressed.

Reversed and remanded.

RIVES, Circuit Judge (dissenting).

Baekgaard v. Carreiro, 9 Cir., 1956, 237 F.2d 459, is distinguishable, I think, from this case on at least two grounds: (1) there, under the law of California, the wife had a community property interest in the policies of insurance, while here, as is conceded, her interest prior to the insured's death was a mere expectancy; (2) there the insurance policies were specifically mentioned in the property settlement, while here the district court correctly found:

> "This stipulation, although providing for the payment of $20,000.00 to the defendant, and appearing to be generally dispositive of the property rights of the parties, made no mention of the policies of insurance involved in this action."

On the other hand, 7 Words and Phrases, p. 479 collects seven cases from five different states, with none contra, all holding that the word "claim" means a legal claim, a demand of right or of supposed right. Likewise, in the early case of Prigg v. Commonwealth of Pennsylvania, 16 Pet. 539, 615, 41 U.S. 539, 615, 10 L.Ed. 1060 it was said: "What is a claim? It is, in a just judicial sense, a demand of some matter, as of right, made by one person upon another, to do or to forebear to do some act or thing as a matter of duty." It seems to me that the appellee has the better of the argu-

ment as to the meaning of the word "claim."

Leaving the word argument, and seeking the intention of the parties to the stipulation, there is even less doubt. The stipulation was, as the district court found, simply a property settlement. The wife's mere expectancy was not a property right. The husband had reserved the right to change the beneficiary in each of the three insurance policies. At no time did the husband need the wife's consent to such change, and there was no necessity to mention the policies in the stipulation.

Even when the wife has upon divorce expressly released her community property interest in such a policy, the failure of the husband to change the beneficiary over a long period of time has been held to amount to a *confirmation* of the designation of the divorced wife as the beneficiary in the policy. Grimm v. Grimm, 26 Cal.2d 173, 157 P.2d 841 (parties divorced in January 1941, husband died in April 1943); Parrish v. Kaska, 10 Cir., 1953, 204 F.2d 451 (interlocutory decree approving agreement December 14, 1945, final decree February 25, 1947, husband died May 18, 1947); see, also, Andrews v. Andrews, 8 Cir., 1938, 97 F.2d 485. In the present case the husband had the same right to change the beneficiary both before and after the divorce. The divorce was granted on December 1, 1955. The husband died nearly three months later, on February 25, 1956, without having changed the beneficiary. Under any construction of the stipulation, is there not a genuine issue of fact as to whether the husband intended to *confirm* the designation of the beneficiary?

It seems clear to me, however, that the policies of insurance were in no way the subject of, or affected by, the stipulation. If the parties intended the stipulation to include the three policies, why were they not mentioned? Judge Bazelon's cogent argument in Mayberry v. Kathan, 1955, 98 U.S.App.D.C. 54, 232 F.2d 54, 55, 56, disposing of a similar case, is fully applicable, I think, to the present situation:

"Since appellee Kathan was the designated beneficiary at the time of Richards' death, her right to take is protected unless there is convincing evidence that the property settlement was intended to divest her interest. Cf. Thomson v. Thomson, 8 Cir., 1946, 156 F.2d 581, 586, certiorari denied 1946, 329 U.S. 793, 67 S.Ct. 370, 91 L.Ed. 679; Andrews v. Andrews, 8 Cir., 1938, 97 F.2d 485. That settlement, while comprehensive in scope, makes no specific reference to the death benefits, and there is no other evidence reflecting the intent of the parties. Absent such evidence, we have no alternative but to apply the settled principle, derived from insurance and estate law, that ' "general expressions or clauses in such agreements are not to be construed as including an assignment or renunciation of expectancies and that a beneficiary therefore retains his status under an insurance policy or under a will if it does not clearly appear from the agreement that in addition to the segregation of the property of the spouses it was intended to deprive either spouse of the right to take property under a will or an insurance contract of the other." ' Thorp v. Randazzo, 1953, 41 Cal.2d 770, 774, 264 P.2d 38, 40, quoting Grimm v. Grimm, 1945, 26 Cal.2d 173, 176, 157 P.2d 841, 843."

The County Judge of Dade County ordered the administratrix to deliver the three policies to the named beneficiary. The Equitable Life Insurance Company and the Metropolitan Life Insurance Company have paid to her the proceeds of two of the policies. The Director of the Claims Service of the Veterans Administration determined that the designated beneficiary was entitled to payment of the National Service Life Insurance policy, though, after this suit was filed, the Government disclaimed the proceeds of that policy and offered to interplead and deposit the funds in Court. The district court decided in favor of the named beneficiary. Of all who have had occasion to pass upon the issue, my two brothers are the first to decide against the named beneficiary. With deference, I think that they err and respectfully dissent.

Rehearing denied; RIVES, Circuit Judge, dissenting.